Good morning. May it please the Court, my name is Harini Raghupati with the Federal Defenders of San Diego for the appellate Mr. Israel Del Toro-Barboza. I'll be taking 12 minutes and my co-counsel Mr. Nieto will be taking 8 minutes. Mr. Del Toro's convictions must be reversed because the government presented insufficient evidence that he knew he was transporting money and that he knew the amount of money was over $10,000. At most, viewing the evidence in the light most favorable to the prosecution, the government's proof at trial established that Mr. Del Toro knew he was transporting some form of contraband and that he was engaged in some type of criminal activity. But as this Court has recognized in Juan H. v. Allen, it's not enough for the prosecution to demonstrate that the defendant knew that some criminal activity was afoot on the night in question. I'll start with the conviction on Count 1, which is for bulk cash smuggling under 31 U.S.C. Section 5332. This statute requires that a defendant have the intent to evade the reporting requirement set forth at Section 5316. Both parties agree that this is a specific intent offense that requires the defendant to know that the reporting requirement applies to him by in turn knowing that he's transporting over $10,000 in money. That much is undisputed. But the government contends that its proof at trial was sufficient to establish Mr. Del Toro's knowledge beyond a reasonable doubt. And in support of this position, it relies exclusively on the drug smuggling cases, in which this Court has held that a defendant's knowledge of drugs could be inferred from the fact that he was the driver and sole occupant of the load vehicle. But drug smuggling cases are not an analogous comparison, because in the drug smuggling statutes, the knowledge element is different in kind in two ways from the knowledge element in the cash smuggling statute. Now, both differences derive from the fact that in the drug smuggling statutes, there is no intent to evade requirement. And accordingly, the knowledge element is different. To prove that a defendant smuggled drugs, the government doesn't need to prove that the defendant knew the exact type of drug at issue, for example, marijuana or methamphetamine. It's enough to show that the defendant knew that he was transporting a controlled substance. And in cases where a JUUL instruction is warranted, the government's showing is even lower. The government need not show positive knowledge on the part of the defendant. It's enough to show that the defendant remained deliberately ignorant. In contrast, to prove that a defendant engaged in cash smuggling, the government must show that the defendant knew he was transporting monetary instruments. The level of specificity there is decidedly different from that of controlled substance. Second, the knowledge element in the drug statutes is different with respect to the quantity of the regulated matter. To prove that a defendant smuggled drugs, the government doesn't need to show the defendant knew the amount of drugs. Rather, that's a sentencing factor that the district court must determine by a preponderance of the evidence to assess the appropriate base offense level under 2D1.1 of the guidelines. But to show that a defendant engaged in cash smuggling, the government must show the defendant knew he had over $10,000. If, for example, a defendant mistakenly believed he had only $8,000 but actually had $11,000, there would be no cash smuggling offense that transpired because the defendant wouldn't know that the reporting requirement applied to him, and there would be no requisite intent to evade. I see how these are all good arguments at trial, but now after the conviction, we're in the Jackson v. Virginia land, and the standard is very low that any reasonable juror could find in favor of the prosecution. So, although you can make a distinction between the drug cases, there's not a case that says, but if there was less than this, that wouldn't have been enough to support the conviction. So, I guess I'm struggling a little bit, because there isn't much evidence in this case, but I'm struggling a little bit to say why couldn't a reasonable juror believe, given that they picked up a box at the box, they could believe that the box was unmarked, that they knew what the content of the box was, and they were taking evasive steps to go to a less-traveled-to port of entry. Great. I think, Your Honor, the difference comes down to the distinction this Court has drawn in Neville's N1H v. Allen of the distinction between reasonable inference and speculation. In both 1H v. Allen and Neville's, this Court drew a line between reasonable inference, which is supported by a chain of logic from speculation, and in Gardner, the Court said a reasonable inference is one that's supported by a substantial foundation in fact. In here, the government presented five different categories of evidence, as Your Honor alluded to, but there was key intermediary evidence that was missing. Specifically, there was no evidence that Mr. Del Toro ever packed the box containing the money. There was no evidence that anyone ever told Mr. Del Toro what was in the box, and there was no evidence that he ever opened the box. There was no fingerprints tying him to the money. And I think absent intermediary evidence of this kind, there is simply not a substantial foundation in fact for the jury to conclude both that he knew he was transporting money, and two, that he knew the amount of money was over $10,000. Well, now, someone put $500,000 in a box in the car. That person must have assumed that one or both of the defendants would deliver it. Isn't that fair to say? Nobody would put $500,000 in a car and not have a constant expectation that it was going to be delivered. Correct. And so doesn't that say something about what was known, what one or both of them must have known? Well, again, Your Honor, I think respectfully the answer is no, and I would point to the same intermediary evidence I just discussed that was lacking. Here, the evidence established that these brothers were part of a family business that engaged in shipping goods from … I know, but think of the perspective of the person putting the box in. What does he think? I think at most the evidence shows that the box would have gotten to its intended recipient. But I think still that there's not enough evidence, there's not sufficient evidence in the record to lead to the conclusion that the brothers knew the box had over $10,000 in it. I think that's too remote or speculative of an inference. Well, he's taking a tremendous chance. I assume somebody delivering that much cash is probably responsible to some smuggling gang. He's taking a chance not only with the money but with his own security. Is he going to do that if he doesn't think the people who will receive it are trustworthy and will deliver it? Well, Your Honor, I think the issue of the delivery of the box is a distinct issue from the fact that the brothers would, in fact, deliver the box is a separate issue from whether they knew what was in the box. Well, they've got to know something about it to be trustworthy. Well, I would point to this Court's decision in Wannach v. Allen in which Judge Gould wrote for the panel in that case. And this Court found that there was insufficient evidence that the defendant committed murder under a theory of aiding and abetting liability. In there, the Court found specifically that the two elements that were lacking was evidence that the defendant had knowledge that his brother would commit murder and that he intended to assist his brother in the facilitation or commission of the offense. And specifically, the Court looked at four different categories of evidence that the government presented. There was evidence of the offense conduct itself, the flight of the defendant from the scene, an issue of false alibi and motive. And the Court held that even aggregating all the reasonable inferences the jury could draw from those four categories of evidence, at most it showed the defendant knew that some criminal activity was afoot on the night in question. And I think the same outcome is dictated here based on the categories of evidence the government has presented. At most, I think the jury could reasonably conclude Mr. Del Toro knew that he was engaged in some type of furtive activity. But with the specific intent element required under the bulk cash smuggling statute, that's simply insufficient. And I want to point out two aspects of the Juan H. Allen decision which I think are important to note. One is that it was cited in this Court's en banc Neville's decision as an example of a case in which no rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. And so it's still good law under Neville's because it applies the right sufficiency analysis under Jackson. And then second, and that was the case in which this Court was actually applying double deference. There was deference owed to the fact that it was a state habeas petitioner attempting to attack a state conviction in federal court. So there was deference under EDPA and there was also deference traditionally owed to the jury verdict. And here we're operating, of course, only under one, albeit a layer of deference, but only one layer of deference. And I think if the Court found that the evidence in Juan H. only showed the defendant was engaging in some criminal activity, the same is true of the evidence that the government presented here. In the remainder of my time, I'd like to turn to... Counsel, if I could interject a question. Yes, Your Honor. Make sure you address it, either now or when you come back. That is, what is the significance for what a rational jury could find beyond a reasonable doubt that both brothers' cell phones got calls from a Mexican number? I guess one of them got a series of four calls. The other got one call, like after the time when they probably should have been arriving in Mexico. Right. I think at most, again, the key fact to draw from this evidence is that the government didn't present evidence of the identity of the caller or the purpose of the call. So I think at most, the most reasonable inference that could be drawn by a juror is that the caller was calling about the brothers' attempted border crossing, given the proximity in time between the calls and the attempted border crossing. And that at most, the caller was calling about some contraband that was in the vehicle. But I think without any evidence of who the caller was or the purpose of the call, this doesn't, again, there's no links in the chain of evidence to conclude that these calls show that Mr. Del Toro knew there was over $10,000 in the box. And I'd like to turn it over to my co-counsel, Mr. Nitor. Thank you. Good morning. May it please the Court, Andrew Nitor on behalf of Aidan Del Toro, Appellant Number 2. Your Honors, if I may, I'd like to begin with the prosecutor on his conduct issues and why they warrant reversal in this case. A prosecutor's job is not to win. It's to win fairly. That was this Court's holding in U.S. v. Kajian. And here the prosecutor did not win fairly, Your Honor. The prosecutor obtained a conviction by arguing false statements, by burden shifting, and then by making improper references to a larger organization and to secret evidence that for some reason the prosecutor could not divulge to the jury. The false statements to summarize were that Aidan Del Toro was questioned by a customs officer and said that he had no money on his person and that he lied. And everybody, including the government, now concedes that that actually never occurred. It was something similar occurred with the driver, Israel, but not with Aidan Del Toro. And so regarding the false statements, there are essentially three levels of misconducts and error regarding the false statements. First, the prosecutor argued this set of false statements that were not true and that everybody now agrees were not true. The prosecutor then used those false statements to tell the jury that Aidan Del Toro was a liar. And then finally, unfortunately, aggravating that misconduct was when defense counsel, when I objected to the prosecutor's misstatement of the facts, the court's response was to advise the jury that that evidence, that false testimony, false evidence was actually true and was within the scope of the testimony, which it was not. And this isn't just a problem of the prosecutor having misstated a fact. This is a case where the prosecutor repeatedly misstated these facts and then used these misstatements to portray Aidan Del Toro as a liar. And this is something that began early and occurred in the opening, in the closing, and in the rebuttal. And in the opening statements, the prosecutor identified Aidan Del Toro as a liar. And then in an improper moment during opening statements, albeit very dramatic, the prosecutor actually turned to Aidan Del Toro and asked him, why did you lie during opening statements? Now, all the defense attorneys jumped up and objected at that point, and that objection was sustained by the court. But then when we see Agent Parker actually testify, he confirmed that he never had this conversation with Aidan Del Toro. He had a similar conversation with the driver, Israel Del Toro, but when I specifically asked him to clarify, he made it very clear that he never asked Alvin Del Toro if he had any money on his person. Were they both asked about whether they were transporting more than $10,000? Yes, Your Honor. Each was asked that specific question. In that case, they both said no. Is that right? That is correct. But the specific question about what's on your person, your client was never asked. That's correct. The district court both said that it was harmless, and I believe the argument that was made by opposing counsel as well, or in part, was the district court gave instructions saying if lawyers misstate a fact, then you should rely on your memory, not on what their arguments are. Why wasn't that good enough to cure that particular error? Your Honor, the reason that didn't cure it is because the court's instruction that attorney statements are not evidence was given at the beginning of the trial and at the end of the trial in the sort of typical boilerplate list of standard instructions. However, when the prosecutor made that misstatement, when he specifically talked about how a dean and a customs officer had this conversation and Alvin Del Toro lied, and I objected, at that point the court then told the jury, no, that argument is within the scope. And so rather than neutralizing that false statement, which the court has an obligation to do, even under a plain error analysis, that would result in reversal. In this case, where there were objections throughout the opening, closing, and rebuttal, the court, unfortunately, rather than correct the prosecutor or at least neutralize the prosecutor's statements, actually aggravated it and gave strength to those misstatements by advising the jury and in a way usurping the role of the jury to remember what was said and what was not said and instructed the jury, yes, that was actually within the scope of the evidence. After the trial, the prosecutor agreed that was not correct and the court acknowledged it as well. And then the prosecutor went on during closing and during rebuttal in rather bizarre moments where the prosecutor's actually quoting a Dean Del Toro in a conversation that never took place and saying, and then Agent Parker asked them, do you have any money? And a Dean Del Toro said, nada, N-A-D-A, nada. And this is a conversation that's being quoted that never took place. And again, this is something that happened throughout the closing and the rebuttal. It was consistent. And calling a defendant a liar is certainly a powerful tool. So I think you just said that he had lied about whether he was transporting more than $10,000, correct? Your Honor, that certainly wouldn't be our position that he lied about that. Each was asked if there was over $10,000, and each one said no. I certainly wouldn't say he was lying because we believe. That's right. The jury could determine that he was. I mean, that was the argument, and that at least supported the prosecutor's argument on that point. I guess I'm just trying to figure out whether it's harmless or not harmless. I know your argument is, no, this tainted the jury's view. But given that there was evidence that the government presented and argued that there was a lie on this other point, I'm trying to get a sense of the extent of the taint. Yes, Your Honor. I think it's important to remember that there was no direct evidence against either defendant. Nobody took the stand and said, I saw either defendant handle this money. I never saw or I saw either defendant place the money in the box. There was absolutely no direct evidence. It was absolutely circumstantial evidence, and all of the evidence that the prosecutor presented regarding the del Toros being involved in a family business, exporting, that one of them was the registered owner and insurer of the vehicle, that sometimes they go through San Ysidro, sometimes they go through the Otay Port of Entry, all of those facts were absolutely consistent with the defense theory as well, that they were just transporting, in their minds, merchandise. And so the prosecutor had to go on circumstantial evidence and had to find some way of saying that they lied about the $10,000. And to accomplish that, the prosecutor rested on almost exclusively and very forcefully that a Dean del Toro lied about having money on his person, and very pointedly said, why did you lie about that, making it clear that the prosecutor's position is, the reason he lied about having money on his person, and we all know now he didn't lie, was because he knew that there was money hidden in the back of the vehicle. And so the government's case was resting on the fact that they believed that Dean del Toro was lying because he was nervous or because he was trying to be evasive, whereas he actually never lied about that. And so for those reasons, it is not harmless, because before the prosecutors focusing on what they considered to be a Dean del Toro's lie, they would have been left with only evidence that could have equally been applied to the defense theory as to the theory of prosecution. And, Your Honor, if I may just address just two of the You're actually out of time. Very well. And there's actually, we'll give you a minute for rebuttal, and you can raise your point on rebuttal. Thank you, Your Honor. Thanks. Good morning, and may it please the Court. My name is Dan Butcher, and I represent the United States. I'd like to pick up with Counsel for Aiden's argument regarding the mistake that was made in the argument by the trial USA. We've conceded it was a mistake. It was an honest mistake. However, it is not reversible error, and I think it's important to keep in mind what the burden of proof is in a situation like this. Under this Court's opinion in Navarro and in Tucker, it's the defendant's burden to show that the mistake was so gross as to probably prejudice the defendant, or restated in Tucker, that it's more probable than not that the mistake materially affected the verdict. Now, I believe that defense counsel has vastly overstated the significance that the prosecutor gave to that statement in his closing argument. He stated that that was almost the exclusive and most forceful argument that was made in the prosecutor's closing. I spent an hour or so last night for probably the third or fourth time reviewing again the prosecutor's closing argument and the prosecutor's rebuttal, and I would hope that the Court would do the same. I think it's important that the Court do so in determining its harmless error analysis with respect to the arguments, and that was not the central argument or even close that the prosecutor made in the closing and the rebuttal argument. The central argument is that nobody would logically trick these two defendants into unwittingly smuggling $500,000 in United States currency from the United States to New Mexico by sneaking it without them knowing it in their commercial van, along with other legitimate merchandise that they were transporting. That was the main, the central argument that was made by the prosecutor. The smoking gun that was argued by the prosecutor, in addition to that main logic and common sense argument, was the phone calls that this Court has already referred to. That somebody is calling both of them between 2 and 2.30 in the morning, at a time when business isn't typically transacted, most people would be in bed, and a time where they would normally arrive in Mexico. And four of those calls went to Aiden Del Toro's cell phone. And counsel for Israel concedes that a jury could reasonably infer from that that this was somebody calling about the merchandise and most probably about some type of contraband. So those were the focal points of the prosecutor's argument in closing. And there were also a list that was put up, it's not in the record, but it was a visual aid for the prosecutor of 20 points as to the circumstantial evidence demonstrating that these defendants knew that they were transporting money. And the comment to which counsel just referred to was one of the 20. And it was not referred to quoting Aiden. He collectively referred to both of the individuals. So under Navarro and Tucker, this is the type of thing that was so gross as to most probably prejudice the defendant. And as the district court stated, well, it wasn't too far off the mark. Clearly it was a mistake, and I'm not here to argue that it was accurate or that the way the prosecutor worded it was supported by the evidence. However, there was evidence that the co-defendant, the brother Israel, was asked if he had any cash on his possession. And that conversation took place within earshot of Aiden, and that Aiden would have overheard Israel say no. And based on the testimony of the third brother, who was not a defendant, but someone involved in the business, not involved in his transaction, that that's something that typically they always carry money in case they need to make a payment, legitimate or not, to Mexican customs once they get to enter the Republic of Mexico. And finally, well, two more points I'd like to make. First, under McChristian, this court said that the district court is in a much better position to evaluate the prosecutor's conduct and its impact. And this court, the Ninth Circuit, properly accords deference to the trial court's view of such matters. Now, this issue was presented to the district court in a motion for a new trial. It was thoroughly briefed and argued. And the district court held that it was harmless error. It was a mistake, sure, but harmless error. And there was no basis upon which to grant a new trial, especially because the district court found that the evidence before the jury strongly supported the verdict. The final point I would like to make is that this is a situation where one would hope at least the adversarial process would have worked. In other words, if the trial ASA made an argument and a representation about the evidence or an inference from the evidence that the defense attorney disagreed with, one would hope that the defense attorney would respect that that was in the statement of the evidence. The defense attorney would stand up in his closing and argue, no, that's not the way I remember the evidence, ladies and gentlemen. It's your recollection that controls. And if there was any dispute, for example, the defense attorney might logically say, and I would think this would be a strong argument, that, well, in light of the district court's presumptive endorsement of this evidence, that I didn't feel like I could take issue with the district court. I could take issue with the prosecutor, sure, but not the district court. And I think that's a fair argument. But I've tried a case in this courtroom before, and there's a live court reporter who's taking real-time transcript of the testimony that's coming up on the screen. And the district court pointed this out to counsel. Look, you could have asked at a break, at a sidebar, that the court reporter go back and take a look at the testimony and see what it was. And if she would have done that, we would have found out, yes, this is what happened, that it was with respect to Israel and not Aiden. At that point, I, the district court judge, could have given a curative instruction. But that never took place here. So for all those reasons, this was harmless error. I don't think there's any basis here at all for cumulative error, because all the other allegations of prosecutorial misconduct that are raised, and I'm happy to address any that the court has any questions about, but I simply think everything was fair and proper argument. And what they refer to was all made in rebuttal in response to specific arguments made by defense counsel in their closing. For example, the reference to a supposed larger organization. Well, first of all, there was no mention of an organization by the prosecutor in his closing or rebuttal that I could find. There was reference to responding to a hypothetical third party introduced into the case by the defendants that someone tricked them by putting this box containing $500,000 into the van, and the prosecutor saying, no, it's just not logical. It defies common sense that a third party would do this. And that third party likely was the third party, and the jury could reasonably infer from the evidence, was the third party who was calling these defendants between 2 and 2.30 in the morning in a series of five phone calls. So to the extent there was a third party, the evidence would have demonstrated that that third party likely was a co-conspirator. So that's why I believe that there's no reverse support. Yes, Your Honor. Could you address the Jackson standard and what a rational jury could have thought those calls meant? Well, yes, I think a rational jury, and again, I would go back to the observation and the inference that counsel for Israel agreed in her brief, I think they got this on page 22 of her brief, that a rational jury could conclude and infer from the temporal proximity of the phone calls that came into the defendant's cell phone to their crossing that the third party caller was most likely calling about some type of merchandise and most probably about some type of contraband. And that then gets to my next argument, which is under Neville's, that clearly is an inference that's within the province of the jury. This is a jury question as to whether they believe that the contraband was money or guns or some type of other evidence. And I've tried cases before involving contraband, mostly drugs coming north, and we run into defenses all the time where there's no evidence that the defendant packed the drugs, loaded the car, that anyone told the defendant there were drugs in the car, and we're arguing inferences. And sometimes the defendant will take a stand and say, yes, explaining away some incriminating circumstantial evidence, I thought that I was smuggling aliens or something other than drugs. Therefore, the United States has now proven beyond a reasonable doubt that I was smuggling drugs. And under Diaz-Cardenas, and I think as may be made clear by Neville's, that's simply an inference that's within the province of the jury. That's the jury's call to make those types of arguments. I think opposing counsel is suggesting, well, but the specificity of what needs to be shown, it has to be more than $10,000. There's no case that, I guess, in the drug context where they say you have to know there's more than this quantity, and if there's no evidence that they knew about the quantity, then that particular element wasn't established. Well, we have a very large box, or at least a banker's box, that weighs approximately 52 pounds. So I still think that it's fair, and there was $500,000 in there, so we're well north of the $10,000 threshold. It might be a more interesting question if we had $10,000 and one penny, or somewhere around the neighborhood of $10,000, then there might be a legitimate question. Well, did the United States prove that they knew it was 10,001 as opposed to 9,999? But here we're at $900,000 in a box with no markings on it that weighs 52 pounds. So I think certainly the jury could infer from that that they knew they were smuggling more than $10,000. And the specific intent requirement that Counsel for Israel discusses doesn't add anything or any additional burden to the knowledge element. The knowledge element is whether they knew there was drugs or money or something else, and she seems to argue that because the bulk cash smuggling statute is specific intent, that basically takes out of play any circumstantial evidence of knowledge, and we have to somehow, to meet the specific element showing, present direct evidence that somebody, that they packed the box, that they looked and opened the box and inspected it, that somebody told them that the money was in there. Well, that would be direct evidence, and granted there's none of that, but that doesn't, the circumstantial evidence can be just as strong as direct evidence. And what the specific intent adds is that assuming they knew that the contraband was in the vehicle, that they were smuggling more than $10,000, the additional element that's introduced by specific intent is whether they understood that they were violating the law by not declaring that money. And that's what makes it specific intent, and that's the element that's not present in drug smuggling, that they understood what they were doing was illegal, that they had an obligation to report it. And, for example, the analogy in the drug smuggling cases would be, and this is what makes it not a specific intent crime, is if the defendant were to, the evidence were to show, for example, that the defendant knew he or she was smuggling marijuana, but believed that based on California's medical marijuana laws or what other laws legalizing the use of marijuana, that that individual, that defendant did not believe that possessing that type of marijuana or importing it was illegal. Well, that's not a defense in a drug smuggling case, because it's not a specific intent crime. But it would be a defense in a bulk cash smuggling case such as this, where there was evidence that they simply didn't understand that they had an obligation to report to customs more than $10,000 in currency. And, of course, we did establish that element, that additional specific intent requirement. There was testimony from the inspectors about signs notifying travelers of an obligation to report more than $10,000. There was actually introduced into evidence, and this is in the record, a picture of the sign. There was evidence that these defendants frequently crossed the border, making it more likely they would be more familiar with the customs regulations, would see that sign more frequently. And, additionally, there was evidence that they were both asked whether they were smuggling more than $10,000. And the answer from both of them was no. So, from that, assuming that they knew they had $10,000, from that false answer, the jury could infer additionally that they knew that what they were doing was violating the law and they had a duty to report it. So, in sum, there was, I think, inadequate grounds to reverse with respect to aid and del Toro, based on the single erroneous statement of the trial AUSA. The evidence was more than sufficient with respect to both defendants to support the jury's verdict under Neville's. I would additionally point out, this was not in my briefing, but it is in the record, we had testimony with respect to aid and del Toro and the evidence against him that he was actually driving the van a day and a half before the crossing and was picking up some of the boxes that were then found in the van when they went southbound. So, although he wasn't driving at the time, he was driving and picking up boxes in connection with the trip in question. And that's testimony from Jesus Reynoso, who was a shoe vendor, whose business was in the San Ysidro area, and he testified for the United States at trial. So, it was additional evidence that I would like to just call the Court's attention to for purposes of the Rule 29 analysis against aid. And it also goes, I think, to the harmlessness of the prosecutor's mistake. So, unless the Court has any questions, I will start. I have no questions. Thank you. Thank you. I'd like to address the distinction between knowledge and intent that Counsel for the Government brought up. Here, the fact that the bulk cash smuggling statute is a specific intent statute makes it markedly different from the drug smuggling statutes, because the knowledge element that we're talking about here is derived from the specific intent. In order to intend to evade the reporting requirement, that intent wouldn't be there but for the fact that the defendant knows he has over $10,000. So, I don't think the knowledge element, it's fair to say the knowledge element is the same as that in the drug smuggling statutes, because here the knowledge element is part and parcel of the intent element. It's inextricably connected to it. And I think if this Court were to hold that the type and level of proof that was sufficient in drug smuggling cases, which both parties concede lack an intent to evade, would be the same as that of a cash smuggling case, it would essentially eviscerate the distinction between intent and knowledge. And then lastly, I just wanted to address, there are several cases that have shown that when there is missing links in the chain, that is not a jury question, as the government pointed out, but that is actually a question of whether there's sufficient evidence as a matter of law. And I would just briefly point to this Court's decisions in Goyle, Lazarenko, Bennett, and Gardner as examples of cases in which there is intermediary evidence that's a necessary premise that's missing. Thank you. All right. The case of the United States v. del Toro Barbosa is submitted. And we'll next hear the case of Sauer v. Department of Education Rehabilitation Services. Judge, could we take a break? Could we take a brief break before that? Right before we hear Sauer, we'll take a five-minute break.
judges: Noonan, Gould, Ikuta